Benjamin Heikali (Cal. Bar No. 307466)
bheikali@treehouselaw.com
Katherine Phillips (Cal. Bar No. 353048)
kphillips@treehouselaw.com
Ammad Bajwa (Cal. Bar No. 358564)
abajwa@treehouselaw.com
TREEHOUSE LAW, LLP
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948

*Attorneys for Plaintiff and the Putative Class*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIA WINSLOW, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| W.T.F.N. INC. and OUI LAB, INC., | |
| *Defendants.* | |

Plaintiff India Winslow ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, brings this Class Action Complaint against W.T.F.N. Inc. dba Classic Erotica and Pure Instincts, and Oui Lab, Inc. ("Defendants" or "Pure Instinct"), based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

## I.  Introduction.

1.  Popular fragrances being sold online claim to have "pheromones" that are scientifically proven to attract other people using natural chemicals and scents.[1]

2.  But the truth is, humans do not emit and cannot detect pheromones, since humans lack a functioning vomeronasal organ.  Thus, consumers are wasting their money on products that lack the advertised characteristics.

3.  Defendants W.T.F.N. Inc. ("WTFN") and Oui Lab, Inc. ("Oui Lab") (collectively "Defendants" or "Pure Instinct") make, sell, and market Pure Instinct brand pheromone fragrances and other pheromone products for both men and women ("Products")[2]. Each Product is prominently labeled with the word "Pheromone," and Defendants' marketing materials, including their website and product descriptions, claim that the Products contain "human-compatible pheromones . . . capable of influencing moods, emotions, and affection and triggering social responses."

4.  Like other consumers, when Plaintiff bought the Products, she read and relied on the representations that the Products contain pheromones which are capable of being detected and thereby influencing and/or attracting others.  She would not

---

[1] Merissa Principe, *Is Pheromone Perfume the Key to Escaping the Friend Zone? I tried it to Find Out*, Well+Good (March 7, 2023), https://www.wellandgood.com/pheromone-perfume/.

[2] The Products are fully defined in Exhibit A ("Ex. A").

have purchased the Products or paid the price she did for the Products if she knew this was false and misleading. As such, Plaintiff has been financially injured as a direct result of Defendants' false and misleading marketing practices.

## II.    Parties

5.    Plaintiff India Winslow is domiciled in Patterson, California. Plaintiff purchased the Pure Instinct True Blue Pheromone Body Spray from Amazon.com in March of 2022. Based on the Product's front label representations that the Product was "pheromone-infused", Plaintiff reasonably believed the Product contained human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract others. Had she known this is not the case, she would not have purchased the Product, or would have paid significantly less for it. As such, she has been financially injured by Defendants' business practices.

6.    Defendant WTFN is a California corporation with a principal place of business at 20950 Lassen Street, Chatsworth, California.

7.    Defendant Oui Lab is a California corporation company with its principal place of business at 15362 Valley Blvd., City of Industry, California. Defendant Oui Lab owns and operates the website IntiMD.com ("IntiMD") and holds itself out as the owner of several personal care products including the Products at issue in this complaint. Oui Lab, as the owner of IntiMD, is also responsible for monitoring the support email listed on WTFN's website (support@intimd.com).

8.    Defendants, through their agents, are responsible for the manufacturing, advertising, marketing, labeling, distribution, and sale of the Products in California and throughout the United States.

## III.    Jurisdiction and Venue.

9.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and

the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

10.    The Court has personal jurisdiction over Defendants because Defendants are domiciled in California and because Defendants sold their Products to consumers in California, including to Plaintiff.  Directly and through its agents, Defendants have substantial contacts with, and receive substantial benefits and income from California.

11.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants are residents of this District.

**IV.    Facts.**

12.    Defendants sell a plethora of pheromone Products, including perfume sprays, perfume oils, body sprays, colognes, and massage lotions that they market as "pheromone" or "pheromone infused." *See example below* and Ex. A (defining full list of Products being challenged by this Complaint).



13.    This labeling leads reasonable consumers to believe the Products contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people.

14.    The off-label marketing only reinforces consumers' belief that the Products contain pheromones that are capable of being detected and thereby able to influence and/or attract other people. Indeed, as demonstrated below, Pure Instinct's website states that the Products contain "human-compatible pheromones" (Copulin and Androstadienone) that are "capable of influencing moods, emotions and affections and triggering social responses," and that "[i]t's not myth, it's science."



**Pure Instinct's Pheromone Formula**

With human-compatible pheromones imported directly from Italy, Copulin and Androstadienone are pheromones from females and males capable of influencing moods, emotions, and affection and triggering social responses.

**For Her Pheromone Perfume Spray**

★★★★★  (231 Reviews)                                      14mL/0.5oz

Indulge your and their senses with the stimulating Pure Instinct For Her Pheromone Perfume Spray. It is a captivating and alluring fragrance designed to enhance your natural magnetism and attraction. Infused with a potent blend of pheromones and essential oils, this spray provides a long-lasting and seductive scent. Experience heightened sensations and irresistible allure.

$31.95   $24.95



15.    The Products' descriptions further reinforce this belief by representing that the pheromones in the Products will "enhance your natural magnetism and attraction" and "amplify your . . . desirability."

16.    Moreover, the Product names and descriptions on the Amazon sales page further reinforce the belief the Products contain pheromones capable of being detected and able to influence and/or attract other people. For example, as demonstrated in the images below, "The Original ***Pheromone Infused*** Essential Oil Perfume Cologne" Product (emphasis added) is described as an "alluring fragrance[]" with human-compatible pheromones" and "the first pheromone fragrance."

## Pure Instinct Roll-On - The Original Pheromone Infused Essential Oil Perfume Cologne - TSA Ready (The Original - Unisex)

Visit the Pure Instinct Store

3.8 ★★★★☆ ⌄    82,974 ratings  |  Search this page

#1 Best Seller  in Women's Cologne

*The Original Roll-On Perfume with Pheromone Infused Essential Oil*

In 1985, our master perfumer had the intuition to formulate alluring fragrances with human-compatible pheromones: "**The Original**," Pure Instinct's first pheromone fragrance, was born.

*Pure Instinct*

The lightly fragranced oil absorbs quickly and leaves the skin soft to the touch, blending perfectly with your body's chemistry. Make it your signature scent.

Perfectly suitable not only for day-to-day use but also for an intriguing date night.

- Made in USA
- NOT Tested on Animals
- FREE of Paraben, Gluten, Glycerin, Alcohol
- TSA Travel Ready
- Eau de Parfum

17.    Additionally, Pure Instinct's website asserts that the pheromones are detected through a specific organ in the nose, referred to as the vomeronasal organ ("VNO"):

What are pheromones?    ∧

Pheromones are invisible chemicals released by animals and insects that can influence behavior within the same species, including sexual arousal. Mammals and insects detect pheromones through an organ in the nose called the vomeronasal organ (VNO, also known as Jacobson's organ), which connects directly to the brain's hypothalamus.

The human body's capability of producing pheromones is limited. Pure Instinct fragrances are infused with human-compatible pheromones that blend perfectly with your body's chemistry, boosting your confidence and inspiring attraction in those that interact with you.

18.    As a result of Defendants' deceptive labeling and marketing practices, consumers are led to reasonably believe that the Products contain pheromones capable of influencing and/or attracting others because they can be detected by the VNO. Unfortunately for consumers, that is not the case.

Class Action Complaint
8

19.    Unbeknownst to consumers, the Products cannot influence and/or attract others because humans do not have a functional VNO, and thus humans are incapable of detecting the Products' pheromones as promised by Defendants.

20.    Research shows that the human VNO lacks the necessary neural connections and sensory cells to detect pheromones, being "repeatedly reviewed as nonfunctional."[3] One study found that "the human ***VNO has no function*** in perception and processing of the most likely human pheromone and a control odor," concluding that "these results provide strong evidence that the human ***VNO has no obvious function***."[4]

21.    Genetic evidence further supports this, as "the genes coding for vomeronasal receptor proteins . . . identified in species with a functional VNO ***have mutated and are non-functional***" in humans.[5]

22.    These findings collectively demonstrate that the human VNO is non-functional for pheromone detection, rendering Pure Instinct's claims – that the Products' "human-compatible pheromones" can be detected by the VNO and thereby influence and/or attract other people – scientifically false.

23.    Further, even if humans did possess a functional VNO, which they do not, Defendants' representation that the pheromones in the Products are "human-

---

[3] Thomas G Mast & Chad L Samuelsen, *Human Pheromone Detection by the Vomeronasal Organ: Unnecessary for Mate Selection?*, 34 Chem. Senses 529 (2009), https://pmc.ncbi.nlm.nih.gov/articles/PMC2695851/.

[4] Johannes Frasnelli et al., *The Vomeronasal Organ Is Not Involved in the Perception of Endogenous Odors*, 32 Hum. Brain Mapping 450 (2011), https://pmc.ncbi.nlm.nih.gov/articles/PMC3607301/.

[5] Tjasse D Bruintjes & Ronald L A Bleys, *The Clinical Significance of the Human Vomeronasal Organ*, 45 Surgical Radiological Anatomy 457 (2023), https://pmc.ncbi.nlm.nih.gov/articles/PMC10039832/.

compatible pheromones" is false and deceptive. In fact, the molecules Pure Instinct represents as "human-compatible pheromones" – androstadienone and copulin – are not human pheromones. A comprehensive 2015 review by Wyatt concluded that androstadienone has "never been shown to be a human pheromone."[6] A 2017 double-blind study also confirmed that exposure to androstadiene had no significant effect on how participants rated the attractiveness or perceived gender of faces of the opposite sex, concluding that "*androstadienone . . . [is] unlikely to be [a] human pheromone*."[7]

24.    Similarly, a 2017 study on synthetic copulin found no effects on men's sexual behavior, stating that "copulin should stop being termed a putative human pheromone or even a chemical signal."[8]   Experts like George Preti, an analytical organic chemist at the Monell Chemical Senses Center, have gone further, stating that such chemicals are not even "physiologically active" since they have never been "isolated in the proper manner."[9]

25.    The FDA has found that similar marketing claims can be false and deceptive. According to 21 C.F.R. § 310.528(a), any product claiming to "arouse or

---

[6] Tristram D Wyatt, *The Search for Human Pheromones: The Lost Decades and The Necessity of Returning to First Principles*, 282 Royal Society Proceedings B 1 (Apr. 7, 2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4375873/.

[7] Robin M. Hare et al., *Putative Sex-Specific Human Pheromones Do Not Affect Gender Perception, Attractiveness Ratings Or Unfaithfulness Judgements of Opposite Sex Faces*, Royal Society Open Science (March 8, 2017), https://royalsocietypublishing.org/doi/10.1098/rsos.160831.

[8] Megan N. Williams & Coren Apicella, *Synthetic Copulin Does Not Affect Men's Sexual Behavior*, 4 Adaptive Hum. Behav. & Physiology 121 (2018), https://doi.org/10.1007/s40750-017-0083-y.

[9] Rebecca Trager, *Supposed Human Pheromones Fail to Pass Sniff Test*, Chemistry World (March 17, 2017), https://www.chemistryworld.com/news/supposed-human-pheromones-fail-to-pass-sniff-test/3006987.article.

increase sexual desire" is classified as an aphrodisiac drug product, and such products are considered misbranded unless they receive FDA approval. Further, the FDA has stated unequivocally that there is "a lack of adequate data to establish general recognition of the safety and effectiveness of any of these ingredients, or any other ingredient, for OTC use as an aphrodisiac." *See* 21 C.F.R. § 310.528(b). In simpler terms, the FDA has determined that labeling claims for aphrodisiacs for over-the-counter use are "false, misleading, or unsupported by scientific data." Any such violation of 21 C.F.R. § 310.528 would constitute unlawful conduct under California Health & Safety Code § 109875 *et seq*. (the Sherman Food Drug and Cosmetic Law) which adopts and parallels federal FDCA requirements, including prohibitions on false and misleading labeling, as well as 21 C.F.R. § 310.528.

26.    Here, Defendants promise Products that contain "human-compatible pheromones" that are capable of being detected and thereby able to influence and/or attract others. Thus, without FDA approval, the Products are misbranded as aphrodisiac drug products under federal and California law.

27.    Defendants' false and misleading labeling and marketing drives the demand for Products. As explained above, the reason that people buy the Products is because they believe the Products contain pheromones which attract and/or influence other people. But without human-compatible pheromones, and without human ability to detect pheromones, the Products do not provide this benefit. No reasonable person would pay for and use the Products at the current market price if they knew that the Products do not contain pheromones that can be detected by humans. If consumers knew the truth, the price of Defendants' Products would crater. Moreover, if consumers knew the truth, they would have paid significantly less for the Products. Thus, the economic injury here is the price premium attributable to the false and misleading pheromone statements on the Products marketing and labeling.

28.     Alternatively, because the false and misleading pheromone statements are the sole reason that reasonable consumers purchase the Products, the economic injury is the entire price of the Products that Plaintiff and the class members purchased. Thus, the Products are, in fact, wholly worthless.

29.     Lastly, had consumers known the Products were unlawful drugs, they would not have purchased them, and are thus entitled to a full refund of the Products' purchase price. *See Jackson-Jones*, v. *Epoch Everlasting Play*, *LLC*, No. 2:23-CV-02567-ODW (SKX), 2024 WL 4868263, at *5 (C.D. Cal. Sept. 5, 2024) ("When a party sells products to consumers that are 'inherently unfair or illegal,' a full refund damages model is appropriate.'") (citing to *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 976 (N.D. Cal. 2022).

30.     Plaintiff wants Defendants to fix their practices and sell products with accurate labeling. Although Plaintiff regularly shops on Amazon, which sells the Products, absent an injunction of Defendants' deceptive labeling and advertising, she will be unable to rely with confidence on Defendants' labeling and advertising of the Products in the future. If Defendants fixed their Products, so that they were capable of influencing and/or attracting other humans and were properly labeled, she would buy them again.  But given Defendants' past deception and because Plaintiff lacks personal knowledge as to Defendants' specific business practices, Plaintiff cannot rely on Defendants' word alone that they fixed the problem.  Plaintiff faces an imminent threat of harm because she will not be able to rely on Defendants' labels and advertising in the future and will not be able to buy the Products, even if Defendants claim to have fixed the issue. To buy the Products again, Plaintiff needs the Court to enter an order forbidding Defendants' from claiming that its fragrances contain pheromones capable of human detection.

31.    Plaintiff also seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

32.    A legal remedy is not adequate if it is not as certain as an equitable remedy.  To obtain a full refund as damages, Plaintiff must show that the Products she received have essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendants' misrepresentations.  Obtaining a full refund at law is less certain than obtaining a refund in equity.

33.    Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

## V.    Class action allegations.

34.    Plaintiff brings the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons in the U.S. who, within the applicable statute of limitations period, purchased one or more of the Products ("Nationwide Class")

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more of the Products ("California Subclass") (collectively, the Nationwide Class and California Subclass shall be referred to as the "Class")

35.    Plaintiff reserves the right to amend the Class definitions if discovery or further investigation reveals that the Class should be expanded or narrowed, divided into addition subclasses under Rule 23(c)(5), or modified in any other way.

36.     The following people and entities are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

37.     The action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

### *Numerosity*

38.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members. Class members can be identified through Defendants' sales records, third-party sale records, and public notice.

### *Predominance of Common Questions*

39.     Common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Class. Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' misconduct detailed at length in this Complaint.

40.     Specifically, common questions of law and fact include, without limitation:

(1) whether Defendants made false or misleading statements of fact in their labeling and advertising of the Products;

(2) whether reasonable consumers would rely upon Defendants' labeling and advertising of the Products;

(3) whether Defendants knew or should have known their representations were false or misleading;

(4) whether certification of the Class is appropriate under Rule 23;

(5) whether Defendants violated California's consumer protection statutes;

(6) whether Defendants committed a breach of an express or implied warranty; and

(7) damages needed to reasonably compensate Plaintiff and the proposed Class.

### Typicality & Adequacy

41.    Plaintiff's claims are typical of the proposed Class. Like the proposed Class, Plaintiff purchased the Products. Moreover, there are no conflicts of interest between Plaintiff and the Class.

### Superiority

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims

### First Cause of Action
### Violation of California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500, *et seq.*
### (*On behalf of the Nationwide Class; and in the alternative, on behalf of the California Subclass*)

43.    Plaintiff incorporates each and every factual allegation set forth above.

44.    Plaintiff brings this cause of action on behalf of herself and members of the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

45.    Defendants have violated Section 17500 of the California Business and Professions Code.

46.    Defendants violated, and continue to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Class members. As alleged more fully above, Defendants falsely advertised their Products by representing that they contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people, when that is not the case.

47.    Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products.  In addition, class and subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

48.    Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decisions of Class members.

49.    Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Products at the price they paid if they had known that the Products do not contain human-compatible

pheromones that are capable of being detected and thereby able to influence and/or attract other people, or (b) they received products that were, in truth, worthless.

### Second Cause of Action
### Violation of California's Consumers Legal Remedies Act
### California Civil Code § 1750, *et seq.*
### (*On behalf of the Nationwide Class; and in the alternative, on behalf of the California Subclass*)

50.    Plaintiff incorporates each and every factual allegation set forth above.

51.    Plaintiff brings this cause of action on behalf of herself and members of the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

52.    Plaintiff and the Nationwide Class, or in the alternative, the California Subclass, are "consumers," as the term is defined by California Civil Code § 1761(d).

53.    Plaintiff and the Nationwide Class, or in the alternative, the California Subclass, have engaged in "transactions" with Defendants as that term is defined by California Civil Code § 1761(e).

54.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

55.    As alleged more fully above, Defendants have violated the CLRA by falsely representing that the Products contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people. Moreover, Defendants omitted the fact that humans do not have the functioning organ necessary to detect pheromones.

56.    Defendants knew, or should have known, through the exercise of reasonable care, that these statements and omissions were false and misleading.

57.    Defendants violated, and continue to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendants represent that their Products contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people, when in reality they do not and cannot.

58.    Defendants also violated, and continue to violate, section 1770(a)(7) of the California Civil Code by representing that Products offered for sale are of a particular standard, quality, or grade, when they are another. Defendants represent that their Products contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people, when in reality they do not and cannot.

59.    Lastly, Defendants violated, and continue to violate, section 1770(a)(9) of the California Civil Code. Defendants violated this provision by advertising their Products as containing human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people, when in fact Defendants do not intend to sell the Products as advertised.

60.    Defendants' false labeling was likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendants knew, or should have known, through the exercise of reasonable care, that these statements were inaccurate and misleading.

61.    Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products. In addition, class and subclass-wide reliance can be inferred because

Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

62.     Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decisions of Class members.

63.     Plaintiff and Nationwide Class, or in the alternative, the California Subclass, were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Products or would have paid less for the Products if they had known that the Products do not actually contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other humans.

64.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the subclass, seeks injunctive relief.

65.     CLRA § 1782 NOTICE. On October 22, 2024, a CLRA demand letter was sent to WTFN's registered agent and headquarters via certified mail (return receipt requested), that provided notice of WTFN's violations of the CLRA and demanded that WTFN correct the unlawful, unfair, false and/or deceptive practices alleged here. WTFN has not agreed to fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt. Thus, Plaintiff and the Class seek all monetary relief allowed under the CLRA.

66.     CLRA § 1782 NOTICE. Oui Lab owns and operates IntiMD, a website holding itself out as an owner of the Products. Thus, Oui Lab received notice of its violation of California Civil Code § 1782 on October 25, 2024 when WTFN and its agent received the aforementioned notice letter from Plaintiff. Additionally, on February 14, 2025, a CLRA demand letter was sent to Oui Lab's registered agent and headquarters via certified mail (return receipt requested), that provides notice of Oui Lab's violations of the CLRA and demands that Oui Lab correct the unlawful, unfair, false and/or deceptive practices alleged here. Although Plaintiff believes that

the constructive notice is sufficient, Plaintiff intends to amend this Complaint 30 days after Oui Lab's receipt of the letter to seek all damages allowed under the CLRA.

67.     A CLRA venue declaration is attached.

### Third Cause of Action
**Violation of California's Unfair Competition Law**
**California Business & Professions Code § 17200,** *et seq.*
**(*On behalf of the Nationwide Class; and in the alternative, on behalf of the California Subclass*)**

68.     Plaintiff incorporates each and every factual allegation set forth above.

69.     Plaintiff brings this cause of action on behalf of herself and members of the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

70.     Defendants violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

71.     Defendants violated the unlawful prong of the UCL. Defendants engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

72.     In addition, Defendants engaged in unlawful conduct by violating the California Health & Safety Code § 109875 *et seq*. (the Sherman Food Drug and Cosmetic Law) which adopts and parallels federal FDCA requirements, including prohibitions on false and misleading labeling, as well as 21 C.F.R. § 310.528.

73.     Defendants also violated the fraudulent prong. As alleged in detail above, Defendants' representations that their Products contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or

attract other people is likely to deceive, and did deceive, Plaintiff and other reasonable consumers.

74. Moreover, Defendants omitted crucial information from the Products' labeling and advertising, failing to disclose that humans lack a functioning sensory organ necessary to detect pheromones.

75. Defendants have also violated the unfair prong, as detailed above. Defendants' conduct caused substantial injury to Plaintiff and Class members. The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendants' conduct (which is none). Inaccurately labeled pheromone fragrances and pheromone products have no public utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels and advertising only injure healthy competition and harm consumers.

76. Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendants' labeling is false and misleading. Their labeling is likely to deceive, and did deceive, reasonable consumers like Plaintiff.

77. Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

78. Defendants' conduct violated the public policy against false and misleading labeling and advertising, which is tethered to the CLRA and the FAL, as well as California's Sherman Law.

79. For all prongs, Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements and omissions when purchasing the Products. In addition, class and subclass-wide reliance can be inferred because Defendants' misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

80.    Defendants' misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of Class members.

81.    Plaintiff and the Class were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Products at the price they paid if they had known that the Products do not contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other humans.

### Fourth Cause of Action
### Breach of Express Warranty
### (*on behalf of the California Subclass*)

82.    Plaintiff incorporates each and every factual allegation set forth above.

83.    Plaintiff brings this cause of action on behalf of herself and the California Subclass.

84.    Defendants, as manufacturers, marketers, distributors, supplier, and/or sellers of the Products, issued material, written warranties by representing that the Products contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people. This was an affirmation of fact about the Products and a promise relating to the goods.

85.    This warranty was part of the basis of the bargain and Plaintiff and California Subclass members relied on this warranty.

86.    In fact, the Products do not conform to the above-referenced warranty because, as alleged in detail above, the Products labeling and advertising is inaccurate.

87.    Plaintiff and California Subclass members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing harm, because they would not have purchased the Products at all or would not have purchased them at the price they paid if they had known that the Products

do not contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people.

88.     Plaintiff and the other California Subclass members notified WTFN of the breaches of its express warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter regarding WTFN's breaches on October 22, 2024.  WTFN was also on notice of its breaches from other sources, including relevant scientific literature.

89.     Plaintiff and the other California Subclass members notified Oui Lab of the breaches of its express warranties within a reasonable time and/or were not required to do so. Oui Lab owns and operates IntiMD, a website holding itself out as an owner of the Products. Thus, Oui Lab received constructive notice of its breaches of its express warranties when WTFN and its agent received the aforementioned notice letter from Plaintiff.  Additionally, on February 14, 2025, a notice letter was sent to Oui Lab's registered agent and headquarters via certified mail (return receipt requested), that provides notice of Oui Lab's breaches of express warranties. Oui Lab was also on notice of its breaches from other sources, including relevant scientific literature.

### Fifth Cause of Action
### Breach of Implied Warranties
### (*on behalf of the California Subclass*)

90.     Plaintiff incorporates each and every factual allegation set forth above.

91.     Plaintiff brings this cause of action on behalf of herself and the California Subclass.

92.     Defendants impliedly warranted that the Products, which Defendants manufactured or sold, were merchantable and fit for the ordinary purposes for which they were intended to be used.  As described in greater detail above, Defendants

impliedly warranted that the Products are fit for the purpose of attracting and/or influencing other humans with pheromones.

93. Defendants breached its implied warranty of merchantability when it manufactured, distributed, and sold the Products in un-merchantable condition. These Products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which pheromones are used, as the Products do not contain pheromones that are capable of being detected and thereby able to influence and/or attract other people.

94. Additionally, Defendants' conduct violates California's implied warranty of merchantability statute which provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Comm. Code § 2314(2)(f). Defendants are merchants with respect to the sales of the Products. Therefore, a warranty of merchantability is implied in every sale of the Products to California consumers.

95. Moreover, Defendants omitted crucial information from their labeling and advertising, specifically that humans lack a functioning organ necessary to detect pheromones. Thus, the warranty was breached.

96. Plaintiff and California Subclass members purchased the Products, for the particular purpose of attracting and/or influencing other humans with pheromones.

97. Defendants knew, or had reason to know, that Plaintiff and California Subclass members were purchasing the Products for this particular purpose. Defendants are aware that consumers purchase the Products to attract and/or influence other humans with pheromones. In fact, Defendants advertise to consumers that their Products do just that. Moreover, Defendants were aware or should have been aware that humans cannot detect pheromones and omitted this from their labeling.

98.   Defendants market themselves as knowledgeable and effective developers and purveyors of pheromone fragrances and pheromone products.

99.   Defendants knew, or had reason to know, that Plaintiff and California Subclass members would justifiably rely on Defendants' particular skill and knowledge in selecting or furnishing fragrances containing human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people.

100.   Plaintiff and California Subclass members did justifiably rely on Defendants' judgment and skill.

101.   Defendants breached their implied warranty when they manufactured, distributed, and sold the Products without pheromones that are capable of being detected and thereby influencing and/or attracting others, despite Defendants' advertising the Products as containing human-compatible pheromones. Defendants further breached Cal. Comm. Code § 2314(2)(f) because the Products did not "conform to the promises or affirmations of fact made on the container or label if any" because they did not contain human-compatible pheromones as warranted. Defendants further breached their implied warranty by omitting information regarding the ability of humans to detect pheromones. These Products, when sold and at all times thereafter, were not fit for the particular purpose for which consumers purchased them.

102.   Plaintiff and the other California Subclass members notified WTFN of the breaches of its implied warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter to WTFN regarding its breaches on October 22, 2024.  WTFN was also on notice of its breaches from other sources, including relevant scientific literature.

103.   Plaintiff and the other California Subclass members notified Oui Lab of its breaches of implied warranties within a reasonable time and/or were not

required to do so. Oui Lab owns and operates IntiMD, a website holding itself out as an owner of the Products. Thus, Oui Lab received constructive notice of its breaches of implied warranties when WTFN and its agent received the aforementioned notice letter from Plaintiff. Additionally, on February 14, 2025, a notice letter was sent to Oui Lab's registered agent and headquarters via certified mail (return receipt requested), that provides notice of Oui Lab's breaches of implied warranties. Oui Lab was also on notice of its breaches from other sources, including relevant scientific literature.

104.    Plaintiff and the California Subclass members have had sufficient direct dealings with either Defendants or their agents (retailers and technical support) to establish privity of contract between Defendants, on one hand, and Plaintiff and each of the other California Subclass members on the other hand. Indeed, the Products are primarily sold on an Amazon.com page operated by Oui Labs.[10] Nonetheless, privity is not required here because Plaintiff and each of the other California Subclass members are intended third-party beneficiaries of contracts between Defendants and their retailers, and specifically, of Defendants' implied warranties.

---

[10] *See, e.g.*, https://www.amazon.com/Pure-Instinct-Pheromone-Bodycare-BeautyCare/dp/B00EJDG7XI/ref=sr_1_1?crid=2O90LPQ97K00H&dib=eyJ2Ijoi MSJ9.aUcRsCFLm8HEYkW2xlQCkxbVfjqsZH18sHh6hklbMMX1A6MqqEUis1 NBNRf3vbS-BeX45yYkJZcpeouY0MilVJZ6fHp2JH1V1NG5qhEWX8ic55kyQip27x4Mbejti3u fDyUHCLGFxTB1ror6cS99oWzbQL5v2-_5Gt_D5lzR1fJ5KZFMritPBqrAy9CUzK7EXnSh1fMDJUPR9_CzbQzU4XGR8k Xj3XtdiQymg2VmWbVVpLcW_skKn6-Kkiueo3GWC3qThenD32bUdqd_tIW79ZfPZWl1ASX1s8BaHGSL9iQwKaJVQL ru1iafjEWL5YaJUaPJNxZx-66LbijzHWx9Wmw56GqtOfzSUqD_f5_prqS8J6lMCmd2Gk9GGYSPTrs3iNXdy zJrNsDrjvDOyy6wu04XiZhcq3e1zAPbRat5xF-EloleMn5ZqzY1eW4sPdlF.-Pk_bqjBWb8G59SuMALIaRyivV4rp3SQIsvWUPXQXqA&dib_tag=se&keyword s=pure%2Binstinct&qid=1739484212&sprefix=pure%2Binstinc%2Caps%2C154 &sr=8-1&th=1.

The retailers were not intended to be the ultimate consumers of the Products and have no rights under any warranty agreements provided with the Products; any warranty agreements were designed for and intended to benefit the consumer only.

105.    Defendants' breaches of these implied warranties deprived Plaintiff and California Subclass members of the benefits of their bargains.

106.    Plaintiff and California Subclass members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing harm, because they would not have purchased the Products at all or would not have purchased them at the price they paid if they had known that the Products do not contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people.

### Sixth Cause of Action
**Quasi Contract/Unjust Enrichment/Restitution**
**(*On behalf of the Nationwide Class; and in the alternative, on behalf of the California Subclass*)**

107.    Plaintiff incorporates each and every factual allegation set forth above.

108.    Plaintiff brings this cause of action on behalf of herself and members of the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

109.    As alleged herein, Defendants have intentionally and recklessly made misleading representations to Plaintiff and members of the Class to induce them to purchase the Products. Plaintiff and members of the Class have reasonably relied on the misleading representations and have not received all of the benefits and promises (that the Products contain human-compatible pheromones that are capable of being detected and thereby able to influence and/or attract other people) made by Defendants through the Products' representations. Plaintiff and members of the Class have therefore been induced by Defendants' misleading and deceptive

representations about the Products, and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

110.    Plaintiff and members of the Class have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the Class.

111.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Class—i.e., Plaintiff and members of the Class did not receive the full value of the benefit conferred upon Defendants. Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them.

112.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

## VII.    Relief.

113.    Plaintiff seeks the following relief for herself and the proposed Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

**VIII. Demand for Jury Trial.**

114.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: February 19, 2025                    Respectfully submitted,

                                            By: /s/ *Benjamin Heikali*
                                            Benjamin Heikali (Cal. Bar No. 307466)
                                            bheikali@treehouselaw.com
                                            Katherine Phillips (Cal. Bar No. 353048)
                                            kphillips@treehouselaw.com
                                            Ammad Bajwa (Cal. Bar No. 358564)
                                            abajwa@treehouselaw.com
                                            TREEHOUSE LAW, LLP
                                            3130 Wilshire Blvd., Suite 555
                                            Santa Monica, CA 90403
                                            Telephone: (310) 751-5948

                                            Zachary Arbitman*
                                            George Donnelly*
                                            FELDMAN SHEPHERD
                                            WOHLGELERNTER
                                            TANNER WEINSTOCK & DODIG, LLP
                                            1845 Walnut Street, 21st Floor
                                            Philadelphia, PA 19103
                                            Telephone: (215) 567-8300
                                            zarbitman@feldmanshepherd.com
                                            gdonnelly@feldmanshepherd.com

                                            *Pro Hac Vice Application Forthcoming

                                            *Attorneys for Plaintiff*

**Exhibit A: Full List of Challenged Products**

1. Pure Instinct Fallen Pheromone Perfume Spray

2. Pure Instinct For Her Pheromone Perfume Spray

3. Pure Instinct True Blue Unisex Pheromone Perfume Spray

4. Pure Instinct For Him Pheromone Cologne Spray

5. Pure Instinct Surrender Roll-On Pheromone Perfume Oil

6. Pure Instinct Fallen Roll-On Pheromone Perfume Oil

7. Pure Instinct Lucky Roll-On Pheromone Perfume Oil

8. Pure Instinct Original Roll-On Pheromone Perfume

9. Pure Instinct Crave Roll-On Pheromone Perfume

10. Pure Instinct For Her Roll-On Pheromone Perfume Oil

11. Pure Instinct Original Pheromone Infused Essential Oil

12. Pure Instinct For Her Pheromone Infused Essential Perfume Oil

13. Pure Instinct For Him Roll-On Pheromone Cologne Oil

14. Pure Instinct True Blue Pheromone Body Spray

15. Pure Instinct True Blue Pheromone Massage Lotion

**Venue Declaration Pursuant to Cal. Civ. Code 1780(d)**

I, India Winslow, declare as follows:

1.      I am the named Plaintiff in the above-captioned action and am a citizen of the State of California. I have personal knowledge of the facts set forth in this declaration and am competent to testify to the same. The matters set forth herein are true and correct to the best of my knowledge and belief.

2.      Pursuant to California Civil Code Section 1780(d), I believe that the Central District of California is the proper place for trial of this case because Defendants conduct business in, reside in, and have their principal places of business in this District. Thus, a substantial part of the events or omissions giving rise to the claims at issue in this case occurred in this District.

I declare under penalty of perjury that the foregoing is true and correct, executed on ___02/19/2025___ in Patterson, California

_____
India Winslow